UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ERIN JOHNSON,

                              Plaintiff,

              -against-

J. WALTER THOMPSON U.S.A., LLC, J. WALTER
THOMPSON COMPANY LLC, WPP PLC, and
GUSTAVO MARTINEZ,

                              Defendants.

Case No.: 16 Civ. 01805
(JPO)(JCF)

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR PROTECTIVE ORDER

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

I.   PRELIMINARY STATEMENT ........................................................................... 1

II.  RELEVANT BACKGROUND ............................................................................. 2

    A.  Plaintiff's Allegations and Lawsuit Against Defendants and Gustavo Martinez ............... 2

    B.  Defendants Retain Proskauer Rose LLP to Provide Legal Advice Regarding Plaintiff's Complaint Allegations and Conduct an Investigation in Connection With Same ................................................................................................... 3

    C.  Defendants' and D&G's Retention of Merrick Rossein to Provide Martinez with Equal Employment Training and Facilitate D&G's Provision of Legal Services to Defendants. ............................................................................................... 4

    D.  Plaintiff's Issuance of Subpoenas Seeking Privileged Documents to Plevan and Rossein, and the Parties' Meet-and-Confer Process Regarding Same ............................. 5

III. ARGUMENT ......................................................................................................... 8

    A.  The Documents Requested in the Subpoenas Are Privileged and Therefore Protected From Discovery .................................................................................. 8

        1.  The Documents Sought in the Plevan Subpoena are Protected Under the Attorney-Client and/or Work Product Privileges ........................................... 9

        2.  Certain of the Documents Sought in the Rossein Subpoena are Protected Under Either the Attorney-Client and/or Work Product Privileges ................... 20

    B.  Contrary to Plaintiff's Assertion in her April 13, 2017 Letter, Defendants Have Not Waived the Privilege Attaching to the Documents Sought in the Subpoenas By Placing Them At Issue ................................................................................ 23

    C.  Contrary to Plaintiff's Contention in the April 25, 2017 Letter, There Has Been No Subject Matter Waiver of the Privileged Documents Sought in the Subpoenas ......... 24

IV.  CONCLUSION .................................................................................................... 25

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alpex Computer Co. v. Ninetendo Co., Ltd.*,
No. 86 Civ. 1749 (KMW), 1991 U.S. Dist. LEXIS 13260 (S.D.N.Y. Sept. 23, 1991) ................................................................................................................17, 18

*Asset Value Fund Ltd., P'shp. v. Care Grp.*,
97 Civ. 1487 (DLC) (JCF), 1997 U.S. Dist. LEXIS 17968 (S.D.N.Y. Nov. 12, 1997) .............................................................................................................................15

*Au New Haven, LLC v. YKK Corp.*,
15-CV-03411, 2016 U.S. Dist. LEXIS 160602 (S.D.N.Y. 2016)............................................19

*Ehrich v. Binghamtom City Sch. Dist.*,
210 F.R.D. 17 (N.D.N.Y. 2002).............................................................................................17

*In re GM LLC Ignition Switch Litig.*,
80 F. Supp. 3d 521 (S.D.N.Y. 2015)............................................................................. *passim*

*Gould, Inc. v. Mitsui Mining & Smelting Co.*,
825 F.2d 676 (2d Cir. 1987)...................................................................................................17

*Gruss v. Zwirn*,
276 F.R.D. 115 (S.D.N.Y. 2011) ................................................................................. *passim*

*Hallquist v. Chautauqua County*,
04CV827A, 2005 U.S. Dist. LEXIS 38181 (W.D.N.Y. Decl. 22, 2005) ..........................16, 19

*Haugh v. Schroder Inv. Mgmt. N. Am., Inc.*,
02 CIV 7955 (DLC), 2003 U.S. Dist. LEXIS 14586 (S.D.N.Y. Aug. 25, 2003) .............................................................................................................................20, 22

*In re John Doe Corp.*,
675 F.2d 482 (2d Cir. 1982)....................................................................................................9

*Magee v. Paul Revere Life Ins. Co.*,
172 F.R.D. 627 (E.D.N.Y. 1997) ...........................................................................................21

*Montesa v. Schwartz*,
12 Civ. 6057 (CS), 2016 U.S. Dist. LEXIS 80822 (S.D.N.Y. June 20, 2016) .................21, 22

*Plew v. Limited Brands, Inc.*,
08 Civ. 3741 (LTS) (MHD), 2009 U.S. Dist. LEXIS 39715 (S.D.N.Y. Apr. 23, 2009) .............................................................................................................................21

*In re Refco Inc. Sec. Litig., Nos. 07-MD-1902 (JSR) et al.*,
    2012 U.S. Dist. LEXIS 27480 (S.D.N.Y. Feb. 28, 2012)....................................................9, 10

*Riddell Sports v. Brooks*,
    158 F.R.D. 555 (S.D.N.Y. 1994) ...........................................................................................16

*United States v. District Council*,
    90 Civ. 5722 (CSH), 1992 U.S. Dist. LEXIS 12307 (S.D.N.Y. Aug. 18, 1992).........17, 18, 19

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981)..............................................................................................9, 10, 19

## Other Authorities

276 F.R.D at 129 ....................................................................................................................14

Fed. R. Civ. P. 26 ....................................................................................................................8

Fed. R. Civ. P. 26(b)(3)........................................................................................................8, 17

Fed. R. Civ. P. 26(b) and (c) ...................................................................................................8

Fed. R. Civ. P. 26(c) ...............................................................................................................1

Fed. R. Civ. P. 26(c) and Rule 4.B .........................................................................................8

Fed. R. Evid. 502(a)................................................................................................................24

Pursuant to Fed. R. Civ. P. 26(c), Defendants J. Walter Thompson USA, LLC, J. Walter Thompson Company LLC (collectively, "JWT" or the "Company") and WPP plc (collectively, "Defendants") submit this memorandum of law in support of Defendants' motion for protective order protecting certain privileged materials sought in two subpoenas issued by Plaintiff Erin Johnson ("Plaintiff") – one to non-party Bettina Plevan and one to non-party Merrick Rossein (collectively, the "Subpoenas") – from discovery in the above-captioned litigation.

## I.      PRELIMINARY STATEMENT

Plaintiff seeks the production of privileged documents underlying two reports prepared by non-parties Bettina Plevan ("Plevan") and Merrick Rossein ("Rossein"), alleging (incorrectly) that such documents are not protected from discovery because neither Plevan nor Rossein were retained to provide Defendants with legal advice.  Plaintiff further contends that any applicable privilege has been waived because Defendants have asserted a *Faragher/Ellerth* defense and thus placed the privileged material "at issue," and because Defendants' disclosure of the reports constitutes a broad "subject matter" waiver with respect to any underlying privileged materials. These claims are wrong as a matter of fact and law.  As set forth below, both Plevan – an attorney retained by Defendants to lead an investigation of the allegations in Plaintiff's Complaint – and Rossein – an attorney and consultant retained by Defendants and their counsel to provide defendant Gustavo Martinez ("Martinez") with equal employment training – carried out the aforementioned duties in connection with their provision of legal advice to Defendants and their counsel concerning this lawsuit and Defendants' counsel did in fact consult with Plevan and Rossein in this regard.   Thus, the materials generated in the course of the two retentions – including interview notes, invoices, attorney-compiled documents, and emails by and between counsel – are protected by the attorney-client and work product privileges.   Moreover, Defendants have not waived either of these privileges.  Indeed, Defendants have made clear in

1

open court that Defendants are not relying on the privileged documents to support any *Faragher/Ellerth* defense they may have and furthermore, Defendants have made the *entirety* of Plevan's and Rossein's written conclusions regarding the lawsuit – i.e., the two reports – available to Plaintiff.  Accordingly, Plaintiff cannot show that she has been prejudiced in any way by the withholding of the privileged materials, and Defendants' motion for protective order should be granted.

## II.   RELEVANT BACKGROUND

### A.  Plaintiff's Allegations and Lawsuit Against Defendants and Gustavo Martinez

JWT is an international advertising agency headquartered in New York City.[1]  Second Am. Compl. ¶¶ 14, 24.  Plaintiff is currently employed at JWT as its Chief Communications Officer.  *Id*. ¶¶ 1, 30.  During the time period relevant to this case, Plaintiff reported directly to JWT's Worldwide Chairman and Chief Executive Officer ("CEO").  *Id*. ¶ 1.  In 2015, defendant Gustavo Martinez ("Martinez") became JWT's Worldwide Chairman and CEO.  *Id*.

On or about February 22, 2016, Plaintiff's counsel sent a letter to WPP (the "February 22, 2016 Letter") asserting allegations of discrimination and retaliation that would eventually be included in Plaintiff's initial and now Second Amended Complaint ("the Complaint").  Shortly thereafter, on March 10, 2016, Plaintiff filed the instant lawsuit, alleging that Defendants and Martinez violated various federal and state statutes by creating a sex-based hostile work environment and then retaliating against Plaintiff when she complained about same.  *See* Dkt. Nos. 1, 62.  Plaintiff seeks compensatory damages – including for purported damage to her reputation – in her suit.  By mutual agreement with Defendants, Martinez resigned and transitioned out of the JWT Chairman and CEO role, effective March 17, 2016.  He remains employed by WPP and currently works in Europe.

---

[1] JWT is an indirect wholly-owned subsidiary of WPP.  Second Am. Compl. ¶¶ 15-17.

2

**B. Defendants Retain Proskauer Rose LLP to Provide Legal Advice Regarding Plaintiff's Complaint Allegations and Conduct an Investigation in Connection With Same**

On or about March 12, 2016, following the filing of the above-captioned action, Defendants' counsel, Davis & Gilbert LLP ("D&G"), contacted Plevan, a partner at the law firm of Proskauer Rose LLP ("Proskauer"), regarding this case.  Plevan Decl. ¶¶ 1-2.  After discussions between D&G and Proskauer, Defendants retained Proskauer to provide legal advice to them regarding the allegations in the Complaint and to conduct an investigation in connection with same.  Plevan Decl. ¶ 2.  Plevan led the investigation, which began on March 14, 2016, and consisted of interviews of 32 current and former employees of JWT (including Martinez) by Plevan and other Proskauer attorneys.  Plevan Decl. ¶ 3.  Each of the individuals interviewed was informed at the beginning of his or her interview that Proskauer represented JWT and that the interview was protected by the attorney-client privilege and should be kept confidential.  Plevan Decl. ¶ 3.  Additionally, Proskauer reviewed documents it had requested from JWT and a number of the interviewees, including policies and procedures, agendas, videos, emails, text messages, floor plans and personnel files.  Plevan Decl. ¶ 4.  Certain materials – including interview notes (which reflect the interviewees' communications to Proskauer attorneys in connection with the investigation, impressions of Proskauer attorneys and plans for the completion of the investigation), internal emails, and emails with D&G – were generated and/or prepared by Plevan and other Proskauer attorneys in the course of this investigation.[2]  Plevan Decl. ¶ 7.  At the conclusion of the investigation in mid-April 2016, Proskauer issued a report

---

[2] None of these materials were shared with D&G until the drafting of this Motion.  None of these materials have been shared with any third party.  Plevan Decl. ¶¶ 6-7.

detailing its findings and setting forth its conclusions and recommendations regarding the allegations in the lawsuit (the "Proskauer Report").[3]  Plevan Decl. ¶ 5.

In addition to the investigation, Plevan and other Proskauer attorneys discussed legal issues surrounding the lawsuit with D&G and – based on the results of the investigation – also made recommendations regarding Defendants' defense of the lawsuit, as well as further steps JWT should take going forward with respect to its human resources function.  Plevan Decl. ¶ 8. Furthermore, in connection with its retention, Proskauer has submitted invoices to Defendants detailing the nature of the legal work performed and time spent on same, including meetings between Proskauer attorneys and the interviewees, internal meetings and communications, and other confidential and work product-related material.  Plevan Decl. ¶ 9.

### C. Defendants' and D&G's Retention of Merrick Rossein to Provide Martinez with Equal Employment Training and Facilitate D&G's Provision of Legal Services to Defendants.

At around the same time, on or about March 17, 2016, D&G (on Defendants' behalf) retained Merrick Rossein ("Rossein") of Rossein Associates to provide Martinez with equal employment training.   Rubin Decl. ¶ 4.   Rossein, who is an attorney, is an employment law professor and human resources consultant who provides training for managers and employees on harassment, diversity and respect in the workplace. *Id.* The purpose of Rossein's retention was not only to conduct the trainings, but also – in light of his specialized knowledge of employment discrimination issues – to provide legal advice to Defendants about the instant litigation, their training practices, and the retention of Martinez in an executive position elsewhere within WPP. *Id.*  Martinez attended three separate two-hour training sessions with Rossein in March, April

---

[3] The Proskauer Report is clearly marked "Attorney-Client Privileged."  Plevan Decl. ¶ 5.  It has not been shared with anyone other than Defendants and their counsel (D&G), Martinez and his counsel, and – subject to an agreement that Plaintiff would treat the Proskauer Report as confidential (*see infra*) – Plaintiff and her counsel. Plevan Decl. ¶ 6; Rubin Decl. ¶ 5.

and May of 2016, during which Martinez and Rossein reviewed JWT's employment and anti-harassment policies, as well as standards under New York, U.S. and European Union anti-discrimination laws, and explored cross-cultural competencies (including language differences). At the conclusion of the training, Rossein prepared a report, dated May 10, 2016, which summarized the nature and content of the training and also remarked on Martinez's demeanor and understanding of the concepts discussed (the "Rossein Report").  *Id.*  In the course of arranging Martinez's training and as the instant lawsuit progressed after the trainings concluded, emails were exchanged between Rossein and Rubin (from D&G) and Martinez's counsel Ricki Roer ("Roer") from Wilson Elser Moskowitz Edelman & Dicker LLP ("Wilson Elser").

### D. Plaintiff's Issuance of Subpoenas Seeking Privileged Documents to Plevan and Rossein, and the Parties' Meet-and-Confer Process Regarding Same

Defendants filed their Answer to the Complaint on January 11, 2017.  *See* Dkt. No. 78. The parties then commenced discovery.  On or about April 3, 2017, Plaintiff served subpoenas on Plevan and Rossein.  The subpoena to Plevan (the "Plevan Subpoena") directed Plevan to produce privileged documents, including: documents relating to "[Plevan's] discussions with [Defendants] or others pursuant to the Retention including but not limited to [Plevan's] interview notes"; "documents "reflecting [Plevan's] evaluation of Martinez's conduct," as well as her "conclusions…opinions" and "any recommendations" made pursuant to Proskauer's retention; communications between Plevan and Defendants and/or their counsel; documents detailing the services Plevan performed for Defendants and compensation for same; "[a]ll reports, summaries or other writings including drafts of such documents [Plevan] provided to [Defendants]" during and after Proskauer's retention; documents provided to Plevan by Defendants and/or Martinez in connection with Proskauer's retention and investigation; and documents concerning certain of the events alleged in the Complaint.  *See* Rubin Decl., Ex. A. The subpoena to Rossein (the

"Rossein Subpoena") also directed Rossein to produce privileged documents, including documents concerning any communications Rossein had with Defendants and/or Martinez and/or their counsel.  *See* Rubin Decl., Ex. B.  Defendants objected to the Plevan and Rossein Subpoenas on grounds of attorney-client and/or work product privilege (among others) in two separate letters to Plaintiff's counsel, both dated April 13, 2017.  The aforementioned letters also stated that subject to and without waiving their objections to the Subpoenas or any applicable privilege, Defendants would produce copies of the Proskauer and Rossein Reports upon Plaintiff's agreement that the reports would be treated as "confidential."  Additionally, Proskauer served responses and objections to the Plevan Subpoena, in which it objected to the document requests in the subpoena to the extent they required disclosure of information protected by the attorney-client and/or work product privilege, or any other applicable privilege.

By letter dated April 13, 2017 (the "April 13, 2017 Letter"), Plaintiff objected to Defendants' assertion of privilege with respect to the documents requested in the Subpoenas. Specifically, Plaintiff contended (incorrectly) that the attorney-client privilege did not apply because neither Proskauer nor Rossein were retained to provide Defendants with legal advice. Plaintiff's April 13, 2017 Letter also claimed that Defendants have waived any privilege attaching to the documents requested in the Subpoenas because Defendants have placed the reasonableness of their internal investigation at issue by asserting a *Faragher/Ellerth* defense in their Answer.

Defendants subsequently produced both the Proskauer and Rossein Reports subject to Plaintiff's agreement that she would treat both reports as confidential.  Defendants made clear once again, in their letter enclosing the two reports, that such disclosure did not constitute a waiver of the attorney-client, work product and/or any other privilege(s) attaching to the reports

or other privileged material.  The Proskauer and Rossein Reports have not been disclosed to anyone other than Defendants, their counsel and Plaintiff.  Plevan Decl. ¶ 6; Rubin Decl. ¶ 5.  On April 21, 2017, Rossein, through Defendants and D&G, produced non-privileged materials responsive to the Rossein Subpoena,[4] as well as a privilege log cataloguing privileged materials responsive to the Rossein Subpoena (the "Rossein Log") – specifically, emails between Rossein and Roer and Rossein and D&G attorneys (including Rubin) regarding the lawsuit.  *See* Rubin Decl., Ex. C.  On April 26, 2017, Proskauer produced a revised privilege log cataloguing the privileged materials responsive to the Plevan Subpoena (the "Proskauer Log") – specifically: (1) electronic and handwritten notes taken by Proskauer attorneys during the investigation interviews; (2) earlier drafts of the Proskauer Report containing attorney comments; (3) invoices submitted to Defendants; (4) documents provided to Proskauer by JWT and the interviewees in the course of the investigation; and (5) emails between Proskauer attorneys and D&G, JWT witnesses and/or among themselves regarding the investigation and the lawsuit.  *See* Rubin Decl., Ex. D. The documents listed on the Rossein and Proskauer Logs have been withheld as privileged.

Plaintiff now contends that WPP's announcement that it had retained Proskauer to conduct an investigation and Defendants' disclosure of the Plevan and Rossein Reports on a confidential basis waive the privilege extending to "materials that shaped" those reports because the law precludes "selective disclosure" of privileged documents.  (*See* Letter from Anne Vladeck to Magistrate Judge James C. Francis, dated April 25, 2017, pp. 1-2 (the "April 25, 2017 Letter)).

---

[4] Some of these materials were withheld pending an agreed-upon confidentiality order between the parties – they have since been produced, following the Court's entry of a Confidentiality Order on May 2, 2017 – *see* Dkt. 89).

Pursuant to Fed. R. Civ. P. 26(c) and Rule 4.B of Judge Oetken's Individual Rules, the parties attempted to resolve their disputes surrounding the Subpoenas through the meet-and-confer process – including via a discovery conference before the Court on April 26, 2017 – but were unsuccessful.  This Court thereafter agreed to accept briefing on these issues.

## III.   ARGUMENT

### A. The Documents Requested in the Subpoenas Are Privileged and Therefore Protected From Discovery

Fed. R. Civ. P. 26 provides that parties may only "obtain discovery regarding any *nonprivileged* matter that is relevant to any party's claim or defense and proportional to the needs of the case…" and that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(b) and (c) (emphasis added).   It is well-settled that "a valid assertion of privilege constitutes good cause" supporting the imposition of a protective order prohibiting disclosure of materials covered by the privilege.  *See, e.g., Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc*., 07 Cv. 2014 (SWK), 2008 U.S. Dist LEXIS 4617, at *14 (S.D.N.Y. Jan. 22, 2008) (citing cases).

Communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal assistance are protected by the attorney-client privilege.  *In re GM LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 526 (S.D.N.Y. 2015).  Similarly, under Fed. R. Civ. P. 26(b)(3), a party is generally prohibited from discovering attorney work product – i.e., (1) documents and tangible things (2) that are prepared in anticipation of litigation or for trial (3) by or for another party or its representative."  *See In re GM*, 80 F. Supp. 3d at 531; *Gruss v. Zwirn*, 276 F.R.D. 115, 127 (S.D.N.Y. 2011), *rev'd by and in part,* U.S. Dist. LEXIS 10012 (S.D.N.Y. July 10, 2013).  A

document is prepared in anticipation of litigation – and thus qualifies as attorney work product –

when "in light of the nature of the document and the factual situation in the particular case, the

document can fairly be said to have been prepared or obtained because of the prospect of

litigation." *Gruss*, 276 F.R.D. at 127 (internal quotations and citation omitted). Though the

work product doctrine protects both factual and opinion work product, opinion work product –

i.e., material revealing the mental impressions, conclusions, opinions, or legal theories of a

party's attorney – is considered to be "at the core" of the doctrine and receives special, near-

inviolable protection. *See id; Upjohn Co. v. United States*, 449 U.S. 383, 400-01 (1981)*; In re

John Doe Corp.,* 675 F.2d 482 (2d Cir. 1982)*.* As set forth below, the documents sought in the

Subpoenas fall squarely into at least one – and in some cases, both – of these privileges, and

therefore should be protected from discovery.

### 1. The Documents Sought in the Plevan Subpoena are Protected Under the Attorney-Client and/or Work Product Privileges

#### (a) Proskauer's Interview Notes[5] Are Protected by the Attorney-Client and Work Product Privileges

##### i. *Attorney-Client Privilege*

"It is well established that the [attorney-client] privilege applies to communications

between corporate counsel and a corporation's employees, made 'at the direction of corporate

superiors in order to secure legal advice from counsel," as well as to "conversations between

corporate counsel and *former* employees of the corporation, so long as the discussion related to

the former employee's conduct and knowledge gained during employment." *In re GM,* 80 F.

Supp. 3d at 527, quoting *Upjohn Co. v. United States*, 449 U.S. at 394 and *In re Refco Inc. Sec.

Litig., Nos. 07-MD-1902 (JSR) et al.*, 2012 U.S. Dist. LEXIS 27480, at *18 (S.D.N.Y. Feb. 28,

2012) (emphasis in original). As such, "[i]nterviews of a corporation's employees by its

---

[5] *See* Rubin Decl., Ex. A, Document Request Nos. 7 and 28; Rubin Decl., Ex. D, Categories 4 and 5.

attorneys as part of an internal investigation into wrongdoing" – and the notes from same – "have been repeatedly found to be protected by the attorney-client privilege." *Gruss*, 276 F.R.D. at 124.

In *In re GM*, defendant New GM – in light of the Department of Justice's ("DOJ") criminal investigation into New GM and the civil litigation anticipated as a result – retained an outside law firm ("Jenner") to conduct an investigation of the circumstances leading to the recall of New GM cars, as part of New GM's request to Jenner "for legal advice regarding the pending government investigation."  80 F. Supp. 3d at 524.  In the course of the investigation, Jenner attorneys conducted interviews with current and former New GM employees and collected and reviewed a number of documents.  *See id.*  Jenner generated a variety of written "interview materials" in connection with the interviews, including attorney notes taken during same.  *See id*. The investigation culminated in a final report containing factual findings, citations to many of the witness interviews, and a series of recommendations relating to business policies and training, which was prominently marked: "Privileged and Confidential: Protected by Attorney-Client Privilege and As Attorney Work Product."  *See id*. at 525, 528.  Copies of the report were then provided to the DOJ and other agencies (one of whom published it on its website) and thereafter, a copy of the report was produced to the plaintiffs.  *See id.*  The plaintiffs subsequently filed a motion to compel the production of documents related to the final report, including the interview notes generated by Jenner's attorneys.  *See id*.

Applying the above-cited *Upjohn* and *In re Refco* principles*,* this Court found that the notes from the interviews – which were conducted in connection with an attorney-led internal investigation and New GM's request for legal advice – fell squarely within the attorney-client privilege "at least to the extent that they reflect witnesses' communications" to the attorneys, and

denied the plaintiffs' motion to compel.  *See id*. at 527-28.  In so ruling, the Court found it irrelevant that New GM's CEO had announced before Congress that she would share the final report (and subsequently did so); this statement and disclosure did not, as the plaintiffs contended, mean "that New GM…did not intend to keep the *communications* reflected in the [interview materials] confidential."   *See id*. at 528-29 (stating "the "touchstone of the analysis…is not whether New GM intended to keep confidential the results of its investigations, but rather whether it intended to keep confidential the communications reflected in the Interview Materials" and noting that while the CEO had promised transparency by sharing the final report, she had not promised to disclose the communications reflected in the interview materials, and the interviewees had understood that their communications were intended to be kept confidential). The Court also rejected the plaintiffs' argument that the interview materials were not made for the purpose of providing legal advice – although it acknowledged that New GM's purposes in retaining Jenner and producing the final report were not exclusively legal (since New GM also sought to correct the problems leading to the recalls and address public relations concerns by reassuring the public that it took safety seriously), it emphasized that the attorney-client privilege "does not require a showing that…providing legal advice was the *sole* purpose of an internal investigation."  *See id*. at 529-30.  Rather, as long as "obtaining or providing legal advice was one of the significant purposes of the internal investigation, the attorney-client privilege applies, even if there were also other purposes for the investigation…[r]are is the case that a troubled corporation will initiate an internal investigation solely for legal, rather than business purposes" *Id.* at 530 (internal quotations and citation omitted).  The Court went on to state that regardless of whether the final report itself contained legal advice or not, "the underlying investigation, and the interviews conducted as part of it, had a 'primary purpose' of enabling…Jenner to provide

New GM with legal advice" – which Jenner did – and thus the attorney-client privilege applied to the interview notes. *See id*. at 531.

Similarly, in *Gruss*, the defendant company hired an outside law firm, Schulte, Zabel and Roth LLP ("SRZ"), to investigate financial irregularities that had come to light in order to determine who was responsible and how to best remedy them. 276 F.R.D. at 122. In the course of its investigation, SRZ conducted interviews of company employees, including the plaintiff, who was eventually blamed for the irregularities and resigned. *Id.* Subsequently, the defendant hired a second law firm, Gibson, Dunn and Crutcher LLP ("GDC"), to investigate the irregularities and present findings to the SEC, during which GDC also conducted interviews of company employees. *Id.* at 122-23. The two investigations culminated in the defendant disclosing the irregularities and the internal investigations to investors in a series of phone calls, during which the defendant blamed the plaintiff for the company's problems, resulting in the plaintiff's defamation suit. *Id*. at 123. The investigations also generated a number of written materials, including: (1) talking points prepared by SRZ for defendants to communicate to investors; (2) memoranda prepared by SRZ and GDC detailing the findings of their respective investigations; and (3) PowerPoint presentations that GDC prepared and presented to the SEC, pursuant to a confidentiality agreement – all of which were produced to the plaintiff during discovery. *Id.* at 123-24. The plaintiff moved to compel production of the notes taken by the SRZ and GDC attorneys during the investigation interviews. *Id*. at 124.

This Court, again, held that the interview notes were protected by the attorney-client privilege, despite the fact that the law firms' written conclusions were communicated to the SEC and to investors and prepared in part "for the business purpose of gaining advice on what to communicate to investors and other interested parties." *See id.* at 126 (internal quotations

omitted).   Indeed, the Court stated that "[s]o long as the communication is primarily or predominantly of a legal character, the privilege is not lost merely by reason of the fact that it also refers to certain nonlegal matters," and found that although the SRZ and GDC reports did include instructions on how to communicate with investors, they also contained advice with "clear legal ramifications," such as which employees were responsible and how they should be disciplined, as well as the "possibility of, and strategies for, future litigation."   *Id*. at 125-26 (internal quotations and citation omitted).   Thus, the privilege applied.

Here, as in *In re GM* and *Gruss*, Defendants retained Proskauer, an outside law firm, to conduct an independent investigation of the Complaint allegations as part of their request for legal advice regarding same.   The interviews conducted with current and former JWT employees in the course of this investigation were confidential and to facilitate Proskauer's provision of legal advice to Defendants, as evidenced by the statement given to the interviewees at the outset of each interview that the interview was protected by the attorney-client privilege and the fact that the Proskauer report (which follows a format similar to the report in *In re GM*) contains factual findings followed by advice with "clear legal ramifications" (similar to the advice in the *Gruss* SRZ and GDC reports on how employees should be disciplined).   *See Gruss*, 276 F.R.D. at 126.   As such, the notes from these interviews – to the extent they reflect the interviewees' communications to Proskauer's attorneys – are protected by the attorney-client privilege.   *See In re GM*, 80 F. Supp. 3d at 527-28; *Gruss*, 276 F.R.D. at 126.   This holds true despite WPP's announcement of Proskauer's retention/investigation to the public at the inception of the lawsuit and Defendants' production of the Proskauer Report to Plaintiff on a confidential basis, neither of which precludes application of the privilege to the interview notes.   *See In re GM*, 80 F. Supp. 3d at 529 (attorney-client privilege applied to interview notes notwithstanding CEO's disclosure

of law firm's investigation to Congress and promise that she would share the resulting final report and the company's production of the report to plaintiffs); *Gruss* at 123, 125-26 (interview notes underlying internal investigations conducted by outside law firms were attorney-client privileged even though the fact of the investigations were disclosed to investors and the law firms' written conclusions were communicated to the SEC and produced to the plaintiff). The confidential and privileged nature of the interview notes is underscored by the fact that they were not shared with anyone outside of Proskauer. *See In re GM*, 80 F. Supp. 3d at 529 (finding that interview materials were privileged in part because they had never been shared with any government agency or third party).

### ii. Attorney Work Product Privilege

The interview notes from Proskauer's investigation are also privileged work product. "Interview notes produced in the course of an attorney-led internal investigation conducted in anticipation of litigation and to facilitate the provision of legal advice "have long been considered classic attorney work product," *In re GM*, 80 F. Supp. 3d at 532, as they are "likely to reflect the attorney's thought processes as to which statements by a witness were particularly relevant," *Gruss*, 276 F.R.D at 129. Thus, "forcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored." *Id.*

Here, Proskauer was retained and began its investigation *after* Plaintiff had already filed suit. As such, there is no question that the interviews conducted by Proskauer in furtherance of the investigation were "in anticipation of litigation." *See In re GM,* 80 F. Supp. 3d at 532 (holding that interview notes were protected from discovery under work product doctrine where the interviews were conducted in light of a pending DOJ criminal investigation, *before* any anticipated civil litigation had even commenced); *Gruss*, 276 F.R.D. at 129 (finding that notes of witness interviews conducted by attorneys at two outside law firms to investigate financial

14

irregularities were protected by the work product privilege by virtue of the "possibility" of litigation).   Moreover, as discussed above, each one of these interviews was prefaced with a statement that the interview was protected by the attorney-client privilege and should be kept confidential.   Additionally, the Proskauer interview notes reflect the thoughts and impressions of Proskauer attorneys – including comments on witness statements, plans for the completion of the investigation and litigation strategy – and are therefore shielded from discovery as opinion work product.   And, to the extent that the notes contain factual work product (e.g., witness statements), such communications are protected by the attorney-client privilege.   *See supra; In re GM,* 80 F. Supp. 3d at 532 (finding that the interviews themselves were "shaped by the specter of litigation" where the witnesses were informed that the purpose of the interviews was to gather information to assist in providing legal advice to the company; thus, the work product privilege applied to the interview notes); *Gruss*, 276 F.R.D. at 129-30 (holding that interview notes were not discoverable insofar as they contained opinion work product and that any factual matters within those notes, such as witness statements, were protected by the attorney-client privilege).

(b)  Drafts of the Proskauer Report[6] are Protected by the Attorney-Client and Work Product Privileges

Like the interview notes, earlier drafts of the Proskauer Report are protected by the attorney-client privilege to the extent they reflect the investigation witnesses' communications to Proskauer attorneys in connection with the investigation.   *See In re GM*, 80 F. Supp. 3d at 527-28; *Asset Value Fund Ltd., P'shp. v. Care Grp.*, 97 Civ. 1487 (DLC) (JCF), 1997 U.S. Dist. LEXIS 17968, at *16-17 (S.D.N.Y. Nov. 12, 1997) (finding that a "draft document prepared by an attorney is privileged if it contains information provided in confidence by the client and subsequently maintained in confidence") (internal quotations and citation omitted).

---

[6] *See* Rubin Decl., Ex. A, Document Request Nos. 28-30; Rubin Decl., Ex. D, Category 6.

Furthermore, because the drafts were prepared following the filing of Plaintiff's lawsuit and in furtherance of Proskauer's investigation and retention with respect to same, contain attorney comments, and also summarize Proskauer's interviews with JWT witnesses, they are also protected by the work product privilege.  *See Gruss,* 276 F.R.D. at 127-30 (finding that work product protection applies to summaries and memoranda of witnesses oral statements prepared because of the prospect of litigation, particularly where they reveal an attorney's mental processes).

(c) <u>Proskauer's Invoices[7] Are Protected by the Attorney-Client and Work Product Privileges</u>

"[C]orrespondence, bills, ledgers, statements and time records which also reveal the motive of the client in seeking representation, litigation strategy or the specific nature of the services provided, such as researching particular areas of law, fall within the [attorney-client] privilege."  *Riddell Sports v. Brooks*, 158 F.R.D. 555, 560 (S.D.N.Y. 1994) (internal quotations and citation omitted).  Similarly, "detailed" billing records disclosing litigation strategy and/or legal work performed by an attorney are not discoverable by an opposing party under the work product doctrine.  *See Hallquist v. Chautauqua County,* 04CV827A, 2005 U.S. Dist. LEXIS 38181, at *10 (W.D.N.Y. Decl. 22, 2005).

Here, the invoices Proskauer submitted to Defendants for legal services provided by it in connection with Proskauer's retention and the attendant investigation contain time entries detailing the work performed, including meetings between Proskauer attorneys and the interviewees, internal meetings and communications, and other confidential and work product-related matters.  Thus, the invoices are privileged and not discoverable.  *See Hallquist*, 2005 U.S. Dist. LEXIS 38181, at *10 (finding that under the attorney-client and work product privileges, an

---

[7] *See* Rubin Decl., Ex. Document Request Nos. 4 and 5; Rubin Decl., Ex. D, Category 8.

opposing party is not entitled to obtain disclosure of detailed time records and billing statements reflecting or revealing conversations between counsel, trial strategy and/or legal work that has been done by a party's attorneys); *Ehrich v. Binghamtom City Sch. Dist.*, 210 F.R.D. 17, 20 (N.D.N.Y. 2002) (legal bills privileged where they revealed more than client identity and fee information, such as details of the attorney's factual investigation and the specific nature of the services provided, including services directly related to allegations in the plaintiff's complaint).

(d) <u>Documents Provided to Proskauer by JWT and the Individuals Interviewed During the Investigation[8] Are Protected by the Attorney-Client and Work Product Privileges</u>

Documents received directly from a client that may not otherwise be privileged but are selected and compiled by counsel for litigation purposes are protected work product, as such selection and/or compilation tends to reveal the attorney's thought processes regarding the litigation. *See Gould, Inc. v. Mitsui Mining & Smelting Co.*, 825 F.2d 676, 679-80 (2d Cir. 1987), citing *Sporck v. Peil*, 759 F.2d 312, 316-17 (3d Cir. 1985). Discovery of these selected and compiled documents is appropriate, if at all, only upon showing the "substantial need" and "undue hardship" required by Fed. R. Civ. P. 26(b)(3), and is generally denied if the documents are available from other sources or through other means. *See Gould*, 825 F.2d at 680; *Alpex Computer Co. v. Ninetendo Co., Ltd.*, No. 86 Civ. 1749 (KMW), 1991 U.S. Dist. LEXIS 13260, at *2-3 (S.D.N.Y. Sept. 23, 1991); *United States v. District Council*, 90 Civ. 5722 (CSH), 1992 U.S. Dist. LEXIS 12307, at *35-36, 40-41 (S.D.N.Y. Aug. 18, 1992) ("…[W]hen a party seeks discovery directly from an attorney…there is more than a strong likelihood that the concerns underlying the work product doctrine will be implicated. Moreover, when the information being sought is available from sources less entangled in privilege issues, a founded suspicion may arise that the seeking party is in fact attempting to exploit attorney work product.").

---

[8] *See* Rubin Decl., Ex. A, Document Request Nos. 1-3, 7-12, 14-15, 17-27 and 31; Rubin Decl., Ex. D, Category 7.

Here, Proskauer requested documents directly from JWT and the individuals interviewed to review as part of its investigation and provision of legal advice regarding the allegations in the Complaint, which had already been filed.   This selection and compilation of documents necessarily reveals the Proskauer attorneys' thought processes with respect to instant litigation, as it discloses which documents Proskauer attached the greatest significance relative to Plaintiff's allegations.   Accordingly, the documents are protected under the work product doctrine.  *See Alpex*, 1991 U.S. Dist. LEXIS 13260, at \*2-3 (affirming magistrate judge's ruling that documents obtained directly by counsel from its client as part of counsel's investigation relative to the litigation were protected by the work product privilege); *District Council*, 1992 U.S. Dist. LEXIS 12307, at \*37 (holding that under the work product doctrine, a non-attorney investigator assisting the U.S. Attorney's Office in litigation-related investigation could not be compelled to answer deposition questions regarding documents known to the investigator supporting allegations in the complaint because her identification of such documents would necessarily be "selective" and "no doubt indicate particular documents…to which she and her supervising attorneys attach the greatest significance" and would also reveal how they were preparing to prove and try their case).  Moreover, most, if not all, of the documents sought have been or will be made available to Plaintiff by other means; indeed, insofar as the documents provided by JWT to Proskauer coincide with those sought in Request Nos. 3, 7-12, 14-15, 17-27 and 31 of the Plevan Subpoena – all of which request documents concerning or reflecting the events alleged in the Complaint – these documents will be produced by Defendants pursuant to Plaintiff's first set of discovery requests (subject to Defendants' responses and objection to same).  *See District Council*, 1992 U.S. Dist. LEXIS 12307 (finding no justification for invading work product privilege protecting attorney-retained investigator from being deposed about any

documents known to the investigator supporting allegations in the complaint where all documents with information relevant to the allegations had already been produced).  And, to the extent the documents provided to Proskauer consist of or contain confidential communications from the interviewees in furtherance of the investigation, they are protected by the attorney-client privilege as well.  *See supra*; *Upjohn*, 449 U.S. at 394 (explaining that the giving of information to an attorney to enable him to give sound and informed legal advice falls squarely within the attorney-client privilege and holding that responses to questionnaires prepared and sent by counsel to company employees seeking information in connection with internal investigation for purpose of providing legal advice were privileged).

      (e)  <ins>Internal Proskauer Emails, Emails Between Proskauer and D&G, and Proskauer Emails with JWT Investigation Witnesses[9] are Protected By the Attorney-Client and/or Work Product Privileges</ins>

"Conversations between two attorneys, working in the same office for the same client are covered by the attorney-client and work product privileges."  *Hallquist*, 2005 U.S. Dist. LEXIS 38181, at *10.  Similarly, counsel's conversations regarding a case – including with those investigating matters pertaining to the case – which obviously reflect his or her thoughts, are classic work product.  *District Council*, 1992 U.S. Dist. LEXIS 12307, at *29.  Accordingly, both the internal emails exchanged between the Proskauer attorneys conducting the investigation and the emails between Proskauer attorneys and D&G discussing the investigation and various legal issues surrounding the lawsuit are privileged.  *See Hallquist*, 2005 U.S. Dist. LEXIS 38181, at *10; *Au New Haven, LLC v. YKK Corp.*, 15-CV-03411, 2016 U.S. Dist. LEXIS 160602, at * 17-18 (S.D.N.Y. 2016) (email between attorneys for co-plaintiffs concerning the subject matter of the litigation was privileged work product).  Additionally, because Proskauer's emails with the investigation witnesses occurred after this lawsuit had already been filed and/or constitute

---

[9] *See* Rubin Decl., Ex. A, Document Request Nos. 7 and 8; Rubin Decl., Ex. D, Categories 1-3.

communications between corporate counsel and JWT's current and former employees, made at the "direction of corporate superiors in order to secure legal advice from counsel," these emails are also protected by the attorney-client and/or work product privileges. *See supra; In re GM*, 80 F. Supp. 3d at 527 (internal quotations and citation omitted); *Gruss*, 276 F.R.D. at 127.

> **2.   Certain of the Documents Sought in the Rossein Subpoena are Protected Under Either the Attorney-Client and/or Work Product Privileges**

A select number of documents that are responsive to the Rossein Subpoena are protected by either the attorney-client privilege or work product doctrine.   First, certain of the communications are e-mails between Rossein and either D&G or Wilson Elser that reflect Roer or Rubin's mental impressions, opinions, conclusions and legal theories about the instant lawsuit. *See* Rubin Decl., Ex. C, Categories 1 and 2.   Since these emails were drafted by the parties' attorneys and specifically reference the instant lawsuit, there is no question that they were prepared in anticipation of litigation and qualify as work product. *See Gruss*, 276 F.R.D. at 127 (a document is considered to have been prepared "in anticipation of litigation" if when "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation" (internal quotations and citation omitted).   Moreover, because these e-mails reflect counsel's litigation strategy, including their thoughts, impressions, conclusions, and theories about the lawsuit, they constitute opinion work product and are entitled to heightened protection. *See Haugh v. Schroder Inv. Mgmt. N. Am., Inc*., 02 CIV. 7955 (DLC), 2003 U.S. Dist. LEXIS 14586, at *14 (S.D.N.Y. Aug. 25, 2003) (counsel's letter, which qualified as opinion work product, that was shared with public relations consultant was entitled to heightened protection and not subject to discovery). The mere sharing of this opinion work product with Rossein in no way waives this protection since it is wholly unlikely that doing so "substantially increase[d] the opportunity for potential

adversaries to obtain the information." *Montesa v. Schwartz*, 12 Civ. 6057 (CS) (JCM), 2016 U.S. Dist. LEXIS 80822, at *42-43 (S.D.N.Y. June 20, 2016) (internal quotations and citation omitted).  D&G engaged Rossein, who is an attorney, not only so that he could train Martinez, but also, in light of his specialized knowledge of employment discrimination issues, to provide guidance to D&G in order to enable them craft their litigation strategy and provide legal advice to Defendants about the instant lawsuit, JWT's training practices, and the retention of Martinez in an executive position elsewhere within WPP.  Since Rossein was D&G's consultant, there was simply no risk of likelihood of disclosure of this work product to an adversary.  *See id* at *42-43 (disclosure of attorney's work product to third-party consultants engaged in lawsuit did not waive work product protection since disclosure did not increase the likelihood of adversaries to obtain the information); *Plew v. Limited Brands, Inc.*, 08 Civ. 3741 (LTS) (MHD), 2009 U.S. Dist. LEXIS 39715, at *9 (S.D.N.Y. Apr. 23, 2009) ("[D]isclosure simply to another person who has an interest in the information but who is not reasonably viewed as a conduit to a potential adversary will not be deemed a waiver . . ." (internal quotations and citation omitted)); *Magee v. Paul Revere Life Ins. Co.*, 172 F.R.D. 627, 641 (E.D.N.Y. 1997) (release of documents to consultant did not waive work product protection because disclosure "did not increase the probability that the documents would fall into enemy hands").

Moreover, other emails between Rossein and Rubin are protected by both the attorney-client and work product privileges.  *See* Rubin Decl., Ex. C, Category 3.   The attorney-client privilege has been extended to protect communications between an attorney and its agents or consultants who are engaged to assist attorneys in providing legal services.  For example, in *Byrnes v. Empire Blue Cross Blue Shield*, where an actuary was hired by the client and its counsel to consult on and assess the advisability of altering the client's benefits plan, certain

communications with the consultant were protected under the attorney-client privilege where the communications at issue were specifically meant to assist the attorney in rendering legal advice. 98 Civ. 8520 (BSJ)(MHD), 1999 U.S. Dist. LEXIS 17281, at *6-7 (S.D.N.Y. Nov. 2, 1999).  *See also Gucci Am., Inc. v. Guess?, Inc*., 271 F.R.D. 58, 72-73 (S.D.N.Y. 2010) (holding that communications with patent agent hired by counsel to gather information to assist in preparing for litigation were protected under the attorney-client privilege).   Here, certain e-mails were exchanged between Rossein and Rubin regarding the lawsuit.   Since Rossein provided this information at Rubin's request in order to inform and assist D&G in crafting litigation strategy and to provide legal advice to JWT regarding company-wide employee trainings, they are protected under the attorney-client privilege.  *See Byrnes*, 1999 U.S. Dist. LEXIS 17281, at *6-7 (attorneys' communications with actuary consultant were protected under the attorney-client privilege where the communications at-issue were specifically meant to assist the attorney in rendering legal advice).   Additionally, since these communications reference the lawsuit and include Rossein's impressions that were meant to guide D&G's litigation strategy, they were prepared in anticipation of litigation and qualify as work product.  *See Montesa*, 2016 U.S. Dist. LEXIS 80822, at *53-54 (emails drafted by third-party consultants who were engaged as agents of the attorneys in order to assist with the litigation qualified as work product); *Haugh*, 2003 U.S. Dist. LEXIS 14586, at *15 (document prepared by public relations consultant in anticipation of litigation covered by the work product privilege).  Similarly, a number of other e-mails between D&G and Rossein, *see* Rubin Decl., Ex. C, Category 4, constitute work product because they discuss the instant litigation or were drafted by D&G in order to strategize with Rossein in anticipation of litigation.  *See id*.

**B. Contrary to Plaintiff's Assertion in her April 13, 2017 Letter, Defendants Have Not Waived the Privilege Attaching to the Documents Sought in the Subpoenas By Placing Them At Issue**

Simply pleading a claim or affirmative defense is "insufficient" to put privileged material "at issue" such that the privilege is waived. *Gruss,* 276 F.R.D. at 133. Instead, a party must actually *rely* on the privileged material in question to assert the claim or defense before such "at-issue" waiver will be found. *Id.* (quoting *In re County of Erie*, 546 F.3d 222, 226-29 (2d.Cir. 2008) (emphasis in original).

Plaintiff contends in her April 13, 2017 Letter that Defendants have placed the Proskauer investigation and Rossein training at issue by asserting a *Faragher/Ellerth* defense in their Answer (*see* Dkt. No. 78), and that as a result, any privilege attaching to the Proskauer and Rossein Reports and their underlying materials has been waived. But, as Defendants made clear at the parties' April 26, 2017 discovery conference, they do not intend to rely on Proskauer's retention, investigation or Report, the Rossein training or Report, or the testimony of Plevan or Rossein to assert any *Faragher/Ellerth* defense they may have. *See* Transcript, pp. 5-11. In fact, Plaintiff's counsel acknowledged that Proskauer's retention and accompanying investigation could not form the basis of any *Faragher/Ellerth* defense when it stated in a letter to Proskauer at the time of its retention that it was "difficult to envision what purpose" Proskauer's investigation would serve because Martinez had already resigned from JWT and thus "[i]t is too late for remediation" since "whatever deterrence of unlawful conduct there could be has already taken place." *See* Transcript, pp. 7-8. More significantly, prior to this motion, Defendants never *saw* the privileged materials underlying the Proskauer and Rossein Reports – this fact, standing alone, precludes any claim by Plaintiff that Defendants have waived the privilege attaching to those materials by relying on them and thus placing them "at issue." *See Gruss,* 276 F.R.D. at 136 (finding no at-issue waiver of privilege protecting interview notes and summaries underlying

counsel's investigation where defendants had never even seen the notes and summaries sought by the plaintiff and thus could not have relied on them).

### C. Contrary to Plaintiff's Contention in the April 25, 2017 Letter, There Has Been No Subject Matter Waiver of the Privileged Documents Sought in the Subpoenas

Under Fed. R. Evid. 502(a), "a voluntary disclosure in a federal proceeding…generally results in a waiver *only* of the communication or information disclosed; a subject matter waiver [(i.e., waiver of undisclosed communications or information concerning the same subject matter)] (of either privilege or work product) is reserved for those *unusual situations* in which fairness requires a further disclosure of related protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary."  Fed. R. Evid. 502(a), Committee Notes (emphasis added); *In re GM,* 80 F. Supp. 3d at 533.

Plaintiff's assertion in her April 25, 2017 Letter that Defendants' disclosure of the Proskauer and Rossein Reports waives any privilege covering the materials underlying those reports (e.g., the above-discussed documents, interview notes, emails, etc.) is wrong as a matter of law.  There is simply no evidence that Defendants have used the Proskauer and Rossein Reports "offensively" or to make a "selective or misleading presentation" unfair to Plaintiff in this litigation.  *See In re GM,* 80 F. Supp. 3d at 534 (finding no subject matter waiver of attorney-client and work product privileges protecting interview notes, summaries and memoranda even though report of investigation findings had been disclosed to the plaintiffs because the defendant company had "neither offensively used the [report] in litigation nor made a selective or misleading presentation that is unfair to adversaries in this litigation…put simply, this case does not present the unusual and rare circumstances in which fairness requires a judicial finding of waiver with respect to related, protected information") (internal quotations omitted). Indeed, Defendants have disclosed the *entirety* of Proskauer's and Rossein's findings to Plaintiff

– as set forth in the reports – undermining any claim by Plaintiff that she has somehow been disadvantaged by Defendants' nonproduction of the underlying, privileged materials. *See Gruss*, 276 F.R.D. at 140-41 (finding no subject matter waiver with respect to interview notes and summaries underlying law firm's written investigation findings where the defendants had produced the entirety of same to the plaintiff, which "obviate[ed] any legal prejudice" resulting from defendants' selective disclosure of those findings to investors).[10]

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion for a protective order protecting the privileged documents sought in the Subpoenas from discovery.

---

[10] Plaintff's assertion in her April 25, 2017 Letter that by "[p]ublicizing the Proskauer [i]nvestigation," Defendants have waived any privilege attaching to the written materials underlying that investigation is also without merit – indeed, in both *In re GM* and *Gruss*, the fact that the investigations were being conducted was disclosed to third parties and/or the public, and still no subject matter waiver was found. *In re GM*, 80 F. Supp. 3d at 528, 529-30; *Gruss*, 276 F.R.D. at 123.

Dated: May 10, 2017
      New York, New York

                      Respectfully submitted,

                      DAVIS & GILBERT LLP

                      By:  /s/ Howard J. Rubin
                              Howard J. Rubin
                              Jennifer Tafet Klausner
                              Judith Kong
                              Sharon S. Cohen

                        1740 Broadway
                        New York, New York 10019
                        (212) 468-4800
                        hrubin@dglaw.com
                        jklausner@dglaw.com
                        jkong@dglaw.com
                        shcohen@dglaw.com

                      *Attorneys for Defendants J. Walter Thompson USA, LLC, J. Walter Thompson Company LLC and WPP plc*