UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - -:

ERIN JOHNSON,              :     16 Civ. 1805 (JPO)(JCF)

        :

      Plaintiff,     :    MEMORANDUM AND ORDER

        :

  - against -       :

        :

J. WALTER THOMPSON U.S.A., LLC,  :

J. WALTER THOMPSON COMPANY, LLC, :

WPP PLC, and GUSTAVO MARTINEZ,  :

        :

      Defendants.    :

- - - - - - - - - - - - - - - - - - - -:

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/9/17

     Erin Johnson brings this action against J. Walter Thompson U.S.A., LLC, J. Walter Thompson Company, LLC (together, "JWT"), and WPP PLC (together with JWT, the "Corporate Defendants"), alleging that these defendants discriminated and retaliated against her on the basis of her gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law § 296 et seq., and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. She brings similar claims against the individual defendant, Gustavo Martinez, under the State and City Human Rights Laws. The plaintiff further asserts that the defendants retaliated against her for opposing unlawful practices in violation of the Equal Pay Act, 29 U.S.C. §§ 206(d) and 215(a)(3), and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

1

The Corporate Defendants now move pursuant to Rule 26(c) of the Federal Rules of Civil Procedure for a protective order shielding from discovery materials created in connection with (1) an internal investigation of the plaintiff's allegations conducted by attorney Bettina B. Plevan and the law firm of Proskauer Rose LLP ("Proskauer"), and (2) equal employment training provided to defendant Martinez by Merrick T. Rossein, a law professor and employment law consultant. The motion is granted in part and denied in part.

Background[1]

JWT is an international advertising agency based in New York, and Ms. Johnson has been its Chief Communications Officer since 2009. Johnson, 224 F. Supp. 3d at 301. Mr. Martinez joined JWT as its Global President in 2014 (Second Amended Complaint ("SAC"), ¶ 35), and when he became Chairman and CEO in 2015, the plaintiff began reporting to him directly. Johnson, 224 F. Supp. 3d at 302. Ms. Johnson alleges that Mr. Martinez created a hostile work environment by making sexually suggestive remarks and engaging in unwanted physical touching. Id. at 302-03. For example, on one

---

[1] The factual background of this case is set forh in greater detail in the opinion of the Honorable J. Paul Oetken, U.S.D.J., denying the defendants' motions to dismiss, Johnson v. J. Walter Thompson U.S.A., LLC, 224 F. Supp. 3d 296 (S.D.N.Y. 2016), and in a prior determination resolving another discovery dispute, Johnson v. J. Walter Thompson U.S.A., LLC, No. 16 Civ. 1805, 2017 WL 3055098 (S.D.N.Y. July 18, 2017).

occasion, according to Ms. Johnson, Mr. Martinez told her to come to him so that he could "rape her" in the bathroom. Id. at 302. Later that same day, he entered a meeting that the plaintiff was having with other female employees and asked her which one he could rape. Id. Ms. Johnson further alleges that Mr. Martinez would frequently rub her shoulders and stroke her face. Id.

On February 22, 2016, Ms. Johnson's attorneys sent a letter to the defendants indicating that she believed that she was a victim of discrimination and retaliation. Id. at 304. She was then placed on paid leave pending completion of an internal investigation. Id. at 304-05. On March 10, 2016, Ms. Johnson commenced this action. Thereafter, Mr. Martinez issued a statement through WPP asserting that "there is absolutely no truth to [plaintiff's] outlandish allegations." Id. at 305 (alteration in original). WPP sent a memorandum to its senior executives and clients and to the media stating that it had been investigating the plaintiff's allegations and had "found nothing." Id. On March 14, 2016, JWT and Ms. Plevan executed an engagement letter, pursuant to which the Proskauer firm agreed to conduct an investigation of Ms. Johnson's allegations. (Letter of Bettina B. Plevan dated March 14, 2016, attached as Exh. 4 to Declaration of Anne C. Vladeck dated May 23, 2017 ("Vladeck Decl.")). The following day, an article appeared in the Wall Street Journal announcing the Proskauer investigation and reiterating Mr.

Martinez's denial of the plaintiff's allegations. ("WPP Hires Outside Law Firm to Investigate Allegations Against JWT CEO," attached as Exh. 3 to Vladeck Decl.). According to the Corporate Defendants, "[b]y mutual agreement . . . Martinez resigned and transitioned out of the JWT Chairman and CEO role, effective March 17, 2016. He remains employed by WPP and currently works in Europe."[2] (Def. Memo. at 2). Ultimately, Proskauer issued a report summarizing the results of its investigation on April 18, 2016. (JWT Investigation Report (the "Proskauer Report"), attached as Exh. 5 to Vladeck Decl.).

On March 17, 2016, counsel for the Corporate Defendants contacted Professor Rossein and requested that he provide Mr. Martinez with "equal opportunity training and provide legal advice to Defendants about the Lawsuit, Defendants' training practices, and the retention of Martinez in an executive position elsewhere within WPP." (Declaration of Howard J. Rubin dated May 9, 2017 ("Rubin Decl."), ¶ 4). When the training was complete, Professor Rossein submitted a report on May 10, 2016 (the "Rossein Report"), discussing the content of the training and commenting on Mr. Martinez's demeanor and understanding of the subject matter. (Rubin Decl., ¶ 4; Report of Merrick T. Rossein Concerning Equal

---

[2] JWT is an indirect wholly-owned subsidiary of WPP. (Memorandum of Law in Support of Defendants' Motion for Protective Order ("Def. Memo.") at 2 n.1).

Employment Training Session for Gustavo Martinez, attached as Exh. 9 to Vladeck Decl.).

The Corporate Defendants represent that neither the Proskauer Report nor the Rossein Report has been disclosed to anyone other than the defendants, their counsel, and, subject to a confidentiality order, the plaintiff and her counsel. (Rubin Decl., ¶ 5).

During the course of discovery in this action, the plaintiff served deposition and document subpoenas on both Ms. Plevan and Professor Rossein. (Subpoena addressed to Bettina Plevan, attached as Exh. A to Rubin Decl.; Subpoena addressed to Merrick Rossein, attached as Exh. B to Rubin Decl.). In response, Proskauer and Professor Rossein produced logs indicating that they were withholding certain documents responsive to the subpoenas on grounds of the attorney-client privilege and the work product doctrine. Proskauer has declined to disclose (1) electronic and handwritten notes taken by Proskauer attorneys during the investigation interviews; (2) earlier drafts of the Proskauer Report containing attorney comments; (3) invoices submitted to the Corporate Defendants; (4) documents provided to Proskauer by JWT and the interviewees in the course of the investigation; and (5) emails among Proskauer attorneys and between Proskauer attorneys and JWT witnesses or outside counsel regarding the investigation and the lawsuit (collectively, the "Proskauer Documents"). (Non-

Party Proskauer Rose Privilege Log, attached as Exh. D to Rubin Decl.). Professor Rossein is withholding emails between himself and counsel for Mr. Martinez or counsel for the Corporate Defendants concerning the lawsuit (the "Rossein Documents"). (Categorical Privilege Log in Response to Third Party Subpoena Issued to Merrick Rossein, attached as Exh. C to Rubin Decl.). These documents are the subject of the Corporate Defendants' motion for a protective order.

Discussion

A.    Attorney Client Privilege

The attorney-client privilege protects from disclosure "(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." In re County of Erie, 473 F.3d 413, 419 (2d Cir. 2007); accord American Civil Liberties Union v. United States Department of Justice, 210 F. Supp. 3d 467, 477 (S.D.N.Y. 2016); United States v. Ghavami, 882 F. Supp. 2d 532, 536 (S.D.N.Y. 2012). Obtaining or providing legal advice need not be the sole purpose of the communication; rather, the touchstone is "whether the predominant purpose of the communication is to render or solicit legal advice." In re County of Erie, 473 F.3d at 420; accord United States v. Mount Sinai Hospital, 185 F. Supp. 3d 383, 389 (S.D.N.Y. 2016). The privilege protects both the advice of the attorney to the client and the

information communicated by the client that provides a basis for giving advice.  See Upjohn Co. v. United States, 449 U.S. 383, 390 (1981); In re Six Grand Jury Witnesses, 979 F.2d 939, 943–44 (2d Cir. 1992); In re General Motors LLC Ignition Switch Litigation ("In re GM"), 80 F. Supp. 3d 521, 527 (S.D.N.Y. 2015); Chen-Oster v. Goldman, Sachs & Co., 293 F.R.D. 547, 554 (S.D.N.Y. 2013).  "[T]he burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship."  In re Grand Jury Subpoena Dated Jan. 4, 1984, 750 F.2d 223, 224 (2d Cir. 1984); accord In re Grand Jury Subpoena Dated July 6, 2005, 510 F.3d 180, 184 (2d Cir. 2007); Mount Sinai, 185 F. Supp. 3d at 391; Ghavami, 882 F. Supp. 2d at 536.

   1. Proskauer Documents

  The Corporate Defendants have met this burden with respect to many of the Proskauer Documents.  At the outset, it should be made clear that, although JWT has treated the Proskauer Report as confidential, it is not the Report itself that is at issue, but rather the documents generated during the investigation.  (Def. Memo. at 1); see In re GM, 80 F. Supp. 3d at 529 (finding interview notes privileged even where party disclosed final report of investigation).  Ms. Plevan attests that Proskauer was retained by the Corporate Defendants "to provide legal advice regarding the allegations in the Lawsuit and conduct an investigation . . . in

connection therewith." (Declaration of Bettina B. Plevan dated May 9, 2017 ("Plevan Decl."), ¶ 2). Consistent with that retention, Proskauer attorneys conducted the investigation and "discussed legal issues surrounding the Lawsuit with [Davis & Gilbert, outside counsel for the Corporate Defendants] and, based on the results of the Investigation, made recommendations regarding defending against the Lawsuit and further steps JWT should take in the future with respect to its human resources function." (Plevan Decl., ¶ 8). In addition, materials generated in the course of the investigation, including notes of employee interviews, have not been revealed to any third party, consistent with representations to the interviewees that the interviews were protected by the attorney-client privilege and should be kept confidential. (Plevan Decl., ¶¶ 3, 7).

Notwithstanding these representations, the plaintiff challenges the proposition that the Proskauer Documents reflect the communication of legal advice. She argues:

> The circumstances of the creation of [] the Proskauer Report and the Rossein Report make clear that the retentions were not to obtain legal advice for the corporate defendants, advice and an investigation they had already secured from [outside counsel]. Rather, . . . those reports were obtained to create the impression of remedial action after Martinez's consistent violations of the equal employment laws.

(Plaintiff's Memorandum of Law in Opposition to Corporate Defendants' Motion for Protective Order ("Pl. Memo.") at 6).

With respect to many of the Proskauer Documents, I disagree. "Rare is the case that a troubled corporation will initiate an internal investigation solely for legal, rather than business, purposes; indeed, the very prospect of legal action against a company necessarily implicates larger concerns about a company's internal procedures and controls, not to mention its bottom line." In re GM, 80 F. Supp. 3d at 530. Yet the purpose of a communication need not be exclusively legal in order for the privilege to attach. Id. Rather, the legal purpose need only be predominant, and identification of such a purpose "may [] be informed by the overall needs and objectives that animate the client's request for advice." In re County of Erie, 473 F.3d at 421. Here, there were no doubt multiple motivations for commencing an internal investigation and engaging in the subject communications: to gather information to defend this lawsuit; to determine whether systemic changes were necessary; to decide on a course of action specifically with respect to Mr. Martinez; and to ameliorate a public relations problem. Yet all of these purposes were suffused with the need for legal advice triggered by a lawsuit that had already been filed. This is confirmed by the fact that the Proskauer report contains multiple references to the allegations contained in the lawsuit (Proskauer Report at 1, 7, 9, 11, 15-16) as well as the fact that its recommendations reflect the application of legal expertise (Proskauer Report at 17-19). The plaintiff complains

that any claim that the Proskauer investigation had a primarily legal purpose is undermined by the fact that the Corporate Defendants' outside counsel, Davis & Gilbert, had already conducted one. (Pl. Memo. at 6). But, surely, the fact that a client chooses to seek legal advice from multiple attorneys does not cast doubt on the privileged nature of communications with any one of them.

The attorney-client privilege, then, applies to most categories of documents relating to the investigation that have been withheld by the Corporate Defendants. First, "[i]nterviews of a corporation's employees by its attorneys as part of an internal investigation into wrongdoing and potentially illegal conduct have been repeatedly found to be protected by the attorney-client privilege." Gruss v. Zwirn, 276 F.R.D. 115, 124 (S.D.N.Y. 2011) (collecting cases), rev'd in part on other grounds, No. 09 Civ. 6441, 2013 WL 3481350 (S.D.N.Y. July 10, 2013). That principle applies with full force to the interview notes created by Proskauer here.

Similarly, the drafts of the Proskauer Report are privileged. A draft of a document may be privileged if the draft constitutes an attorney-client communication and was itself intended to be confidential. In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983, 731 F.2d 1032, 1037 (2d Cir. 1984); S.E.C. v. Beacon Hill Asset Management LLC, 231 F.R.D. 134, 145 (S.D.N.Y.

2004); <u>Softview Computer Products Corp. v. Haworth, Inc.</u>, No. 97 Civ. 8815, 2000 WL 351411, at *15 (S.D.N.Y. March 31, 2000); <u>Sequa Corp. v. Gelmin</u>, No. 91 Civ. 8675, 1994 WL 538124 at *3 (S.D.N.Y. Oct. 3, 1994). This is true even where the document in its final form is intended to be disseminated publicly. <u>In re Grand Jury Subpoena Duces Tecum</u>, 731 F.2d at 1037; <u>Sequa Corp.</u>, 1994 WL 538124, at *3. As discussed above, the Proskauer Report reflects the provision of legal advice, so the drafts of that report are similarly privileged. Moreover, even if the drafts are not privileged in their entirety, they are also subject to work product protection, as will be discussed below.

To the extent that they include relevant information, the invoices generated by Proskauer in connection with its investigation are privileged. Ms. Johnson argues that "[u]nder Federal common law, attorney fee arrangements, including the general purpose of the work performed, are not generally protected from disclosure by the attorney-client privilege." (Pl. Memo. at 9 (quoting <u>Riddell Sports, Inc. v. Brooks</u>, 158 F.R.D. 555, 560 (S.D.N.Y. 1994)). This is correct, as far as it goes. But, as the plaintiff acknowledges, where "the specific nature of the services provided" is included in attorney time records, those records may be privileged. (Pl. Memo. at 10 (quoting <u>Diversified Group, Inc. v. Daudergas</u>, 304 F. Supp. 2d 507, 514 (S.D.N.Y. 2003)). Here, the invoices would only conceivably be relevant to

the claims and defenses in this action to the extent they are sufficiently detailed to reveal privileged communications.

The documents received by Proskauer from JWT and from the employees that the firm interviewed do not acquire privileged status merely because they were transferred to the law firm. See Gould, Inc. v. Mitsui Mining & Smelting Co., 825 F.2d 676, 679-80 (2d Cir. 1987); Camp v. Berman, Nos. 14 Civ. 1049, 14 Civ. 2705, 15 Civ. 2586, 2015 WL 3917538, at *3 (S.D.N.Y. June 25, 2015). The Corporate Defendants do not argue otherwise, but instead contend that the selection of the documents constitutes attorney work product (Def. Memo. at 17-19), an issue dealt with below.

Finally, Ms. Johnson contends that Proskauer's communications with Davis & Gilbert are not privileged because Proskauer's involvement was unnecessary in order for Davis & Gilbert to provide its legal advice to the Corporate Defendants. (Pl. Memo. at 10-11). According to the plaintiff, "[i]t strains credulity to imagine that an attorney evaluating [employment] laws would not be able to speak with employees or interpret those laws on his own." (Pl. Memo. at 11 (quoting Scott v. Chipotle Mexican Grill, Inc., 94 F. Supp. 3d 585, 595 (S.D.N.Y. 2015) (alterations in original)). This is a straw man. The Scott case involved the application of the Kovel doctrine, which holds that the communication of confidential information to a third-party does not destroy the privilege where the third-party provides the equivalent of

"translation" services that are necessary for the provision of legal advice. See <u>United States v. Kovel</u>, 296 F.2d 918, 921-22 (2d Cir. 1961) (holding that "the presence of an accountant, whether hired by the lawyer or by the client, while the client is relating a complicated tax story to the lawyer, ought not destroy the privilege, any more than would that of [a] linguist [used for translation]; the presence of the accountant is necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit."). But Proskauer was not engaged to "translate" between JWT's employees and Davis & Gilbert; rather, it was retained to provide its own legal advice to the Corporate Defendants. The boundaries of the <u>Kovel</u> doctrine are therefore irrelevant here, and Proskauer's communications with other attorneys who were also advising its clients does not undermine the privilege. See <u>Sudarsky v. City of New York</u>, No. 89 Civ. 5150, 1990 WL 193964, at *2 (S.D.N.Y. Nov. 28, 1990) (holding communication among co-counsel reflecting legal advice to common client privileged); <u>Stix Products, Inc. v. United Merchants & Manufacturers, Inc.</u>, 47 F.R.D. 334, 339 (S.D.N.Y. 1969) (same).

### 2. Rossein Documents

While the Corporate Defendants assert only work product protection for most of the Rossein Documents that they have withheld, they also identify three documents as subject to the

13

attorney-client privilege. (Rossein Privilege Log). Here, support for application of the privilege is thin. Howard J. Rubin, a partner at Davis & Gilbert, attests that he contacted Professor Rossein on behalf of the Corporate Defendants and engaged him "to provide [Mr. Martinez] with equal employment training and provide legal advice to Defendants about the Lawsuit, Defendants' training practices, and the retention of Martinez in an executive position elsewhere within WPP." (Rubin Decl., ¶ 4). The record contains no engagement letter and no statement from Professor Rossein. The Rossein Report itself provides no indication that its author performed any services other than conducting the requested training and commenting on Mr. Martinez's participation. Accordingly, to permit an informed assessment, the Corporate Defendants shall submit the Rossein Documents as to which they claim attorney-client privilege for my in camera review.

B. Work Product Doctrine

The work product doctrine "shields from disclosure materials prepared 'in anticipation of litigation' by a party, or the party's representative, absent a showing of substantial need." United States v. Adlman, 68 F.3d 1495, 1501 (2d Cir. 1995) (quoting Fed R. Civ. P. 26(b)(3)); accord Bloomingburg Jewish Education Center v. Village of Bloomingburg, 171 F. Supp. 3d 136, 141 (S.D.N.Y. 2016). Opinion work product, consisting of "mental impressions, conclusions, opinions or legal theories . . . concerning the

litigation," Upjohn, 449 U.S. at 400, is entitled to greater protection than factual material, In re Grand Jury Subpoena, 510 F.3d at 183, and must be protected "unless a highly persuasive showing [of need] is made," In re Grand Jury Proceedings, 219 F.3d 175, 190 (2d Cir. 2000) (quoting United States v. Adlman, 134 F.3d 1194, 1204 (2d Cir. 1998) (alteration in original)), as, for example, when counsel's thought processes are central to the litigation, see Anilao v. Spota, No. 10 CV 32, 2015 WL 5793667, at *13 (E.D.N.Y. Sept. 30, 2015); Tribune Co. v. Purcigliotti, No. 93 Civ. 7222, 1998 WL 175933, at *4 (S.D.N.Y. April 14, 1998). The burden of establishing any right to protection is on the party asserting it, In re Grand Jury Subpoenas Dated March 19, 2002 & August 2, 2002, 318 F.3d 379, 384 (2d Cir. 2003), and is "not 'discharged by mere conclusory or ipse dixit assertions,'" In re Grand Jury Subpoena, 750 F.2d at 225 (quoting In re Bonanno, 344 F.2d 830, 833 (2d Cir. 1965)). The protection claimed must be narrowly construed and its application must be consistent with the purposes underlying the asserted immunity. In re Grand Jury Subpoenas, 318 F.3d at 384.

"Under Rule 26(b)(3) of the Federal Rules of Civil Procedure, '[t]hree conditions must be fulfilled in order for work product protection to apply. The material must (1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by his

representative.'" DeAngelis v. Corzine, Nos. 11 Civ. 7866, 12 MD 2338, 2015 WL 585628, at *4 (S.D.N.Y. Feb. 9, 2015) (alteration in original) (quoting In re Veeco Instruments, Inc. Securities Litigation, No. 05 MD 1695, 2007 WL 724555, at *4 (S.D.N.Y. March 9, 2007)). Work product immunity, however, encompasses more than the rule indicates, and includes "intangible work product: an attorney's analysis made in anticipation of litigation, but which has not been memorialized. Such work product is immune from discovery just as if it had been reduced to writing." Ghavami, 882 F. Supp. 2d at 539; accord Obeid v. Mack, No. 14 Civ. 6498, 2016 WL 7176653, at *5 (S.D.N.Y. Dec. 9, 2016); see also United States v. Deloitte LLP, 610 F.3d 129, 136 (D.C. Cir. 2010) (holding that Hickman v. Taylor, 329 U.S. 495 (1947), "provides work-product protection for intangible work product independent of Rule 26(b)(3)").

A document is prepared "in anticipation of litigation" if "in light of the nature of the document and the factual situation in the particular case, it can fairly be said to have been prepared or obtained because of the prospect of litigation." Schaeffler v. United States, 806 F.3d 34, 43 (2d Cir. 2015) (quoting Adlman, 134 F.3d at 1202). "Although a document 'does not lose protection . . . merely because it is created in order to assist with a business decision,''[i]f, regardless of the prospect of litigation, the document would have been prepared anyway, in the

16

ordinary course of business . . . , it is not entitled to work product protection.'" Chen-Oster, 293 F.R.D. at 552-53 (alterations in original) (quoting Adlman, 134 F.3d at 1202, and Clarke v. J.P. Morgan Chase & Co., No. 08 Civ. 2400, 2009 WL 970940, at *7 (S.D.N.Y. April 10, 2009)).

## 1. Proskauer Documents

Ms. Johnson does not contest that the Proskauer Documents were created by JWT or its counsel in anticipation of litigation, indeed, in connection with litigation already filed. Rather, she contends that, as a business matter, it was JWT's policy to investigate any claim of discrimination, so the Proskauer Documents would have been prepared for this independent business purpose, regardless of the litigation. (Pl. Memo. at 11-12). To be sure, routine investigations undertaken by a company's human resources department in response to a claim of discrimination may not implicate the work product doctrine. Nevertheless, even where a business like JWT has a policy of conducting such investigations, the circumstances of a particular investigation may indicate that it had a unique purpose related to impending litigation, triggering work product protection. So, for example,

> In Adams [v. City of Montgomery, 282 F.R.D. 627 (M.D. Ala. 2012)], a municipality's employee filed an internal-affairs complaint alleging discrimination, and threatened suit. 282 F.R.D. at 633. The city's attorney tasked a non-attorney with conducting an internal investigation of the complaint. Id. at 630-33. In the subsequent suit, the city asserted that documents

related to the internal investigation were protected by the work product doctrine. The Court agreed, noting that the attorney that supervised the investigation had raised the potential for litigation and emphasized the need for confidentiality, that the employee's internal affairs complaint had indicated that the employee had already begun legal action, and that the city's internal correspondence concerning the employee's complaint referenced the work product doctrine. Id. at 633–34. Although the city routinely conducted internal investigations, which would not always be entitled to work product protection, this particular investigation in Adams was instigated as a result of a direct threat of litigation, and was protected.

United States ex rel. Bibby v. Wells Fargo Bank, N.A., 165 F. Supp. 3d 1319, 1325 (N.D. Ga. 2015).

So it is here. JWT has a written policy for investigating discrimination complaints. (Employee Policy Manual, attached as Exh. 12 to Vladeck Decl., at 3). But the investigation that led to the Proskauer Report was unique in several ways. First, in contrast to Adams, litigation had not just been threatened; it had already been commenced. See Martinez v. Kleinfeld Bridal Corp., No. 16 Civ. 348, 2017 WL 2859941, at *3 (S.D.N.Y. June 30, 2017) (finding, in response to contention that investigation of discrimination complaint was primarily for business purposes, that timing of notes taken day after employee termination suggested anticipation of litigation). Second, JWT did not rely on its human resources personnel or even in-house counsel to conduct the investigation, but instead engaged outside counsel. And, third, the product of the investigation -- the Proskauer Report -- does

not appear to be in a form consistent with routine investigations of discrimination complaints. Generally, then, the Proskauer Documents are subject to work product protection.

That is not necessarily the case, however, for the documents simply provided to Proskauer by JWT and the interviewees. These documents were not themselves created in anticipation of litigation. If they are entitled to work product protection at all, it is because their disclosure would reveal the thought processes of the attorneys who solicited them. "[T]he selection and compilation of documents may fall within the protection accorded to attorney work product, despite the general availability of documents from both parties and non-parties during discovery." S.E.C. v. Collins & Aikman Corp., 256 F.R.D. 403, 408 (S.D.N.Y. 2009); see Sporck v. Peil, 759 F.2d 312, 316 (3d Cir. 1985).

However, as the Second Circuit has held:

> Not every selection and compilation of third-party documents by counsel transforms that material into attorney work product. To fit within what we have repeatedly characterized as a "narrow exception" to the general rule that third-party documents in the possession of an attorney do not merit work product protection, the party asserting the privilege must show "a real, rather than speculative, concern" that counsel's thought processes "in relation to pending or anticipated litigation" will be exposed through disclosure of the compiled documents.

In re Grand Jury Subpoenas, 318 F.3d at 386 (citations omitted) (quoting Gould, 825 F.2d at 680); accord Collins & Aikman, 256

F.R.D. at 408. Here, there is little danger that the thought processes of Proskauer attorneys will be revealed. As the Corporate Defendants point out, most of the documents at issue have already been produced in response to other discovery demands. (Def. Memo. at 19). Therefore, the disclosure of a small subset of the documents solicited by counsel will not expose their overall strategy. Since these documents are protected by neither the attorney-client privilege nor the work product doctrine, the Corporate Defendants shall produce them.

With respect to the remaining documents, the work product doctrine is not absolute, and can be overcome by a showing of substantial need for production of the subject materials and the inability to obtain equivalent information from other sources. See Adlman, 134 F.3d at 1197, 1204; In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation, 293 F.R.D. 568, 574 (S.D.N.Y. 2013). The plaintiff has not met that burden here. Plaintiff's counsel will be provided with the same documents Proskauer reviewed, and they have access to the same witnesses. See United States v. Zhu, 77 F. Supp. 3d 327, 330 (S.D.N.Y. 2014) (finding no undue hardship from denying disclosure of interview notes where interviewee could be questioned). To the extent it is necessary for counsel to take the depositions of these witnesses rather than interview them informally, they are free to seek an order relaxing the limits on numbers of depositions.

### 2. Rossein Documents

As with the claim of attorney-client privilege, the record remains undeveloped with respect to the assertion of work product protection as to the Rossein Documents. There is little that would assist me, for example, in ascertaining whether any of the Rossein Documents were created "because of" the litigation or, on the other hand, are of the type that would have been created in connection with any human resources anti-discrimination training. The Corporate Defendants shall therefore submit for <u>in camera</u> review the Rossein Documents as to which they assert work product protection.

### C. Waiver

Although, as discussed above, many of the Proskauer documents are subject to either the attorney-client privilege or work-product immunity, both of these protections "may implicitly be waived when [the] defendant asserts a claim that in fairness requires examination of protected communications." <u>United States v. Bilzerian</u>, 926 F.2d 1285, 1292 (2d Cir. 1991); <u>see also</u> <u>John Doe Co. v. United States</u>, 350 F.3d 299, 302 (2d Cir. 2003) (noting that party waives both attorney-client and work product protection by placing substance of protected documents at issue); <u>DeAngelis</u>, 2015 WL 585628, at *6 ("The 'fairness doctrine' analysis applies to waiver of work-product protection just as it does to waiver of

attorney-client privilege.").[3] A person may waive protection where he "asserts a factual claim the truth of which can only be assessed by examination of a privileged communication," even if he does not explicitly rely on that communication. Chevron Corp. v. Donziger, No. 11 Civ. 691, 2013 WL 6182744, at *3 (S.D.N.Y. Nov. 21, 2013) (quoting Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 488 (S.D.N.Y. 1993)). But the fact that a privileged communication may merely be relevant to a claim or defense is insufficient to forfeit protection. In re County of Erie, 546 F.3d at 229; accord Aiossa v. Bank of America, N.A., No. 10 CV 1275, 2011 WL 4026902, at *5 (E.D.N.Y. Sept. 12, 2011). The paramount consideration is "[w]hether fairness requires disclosure," which must be determined "on a case-by-case basis, and depends primarily on the specific context in which the

---

[3] As the plaintiff points out, "Federal Rule of Evidence 502 codifies the doctrine of subject matter waiver where disclosure is made in a federal proceeding." (Pl. Memo. at 17). The rule provides that disclosure of attorney-client communications or work product waives protection for undisclosed materials only if "(1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness be considered together." Fed. R. Evid. 502(a). Here, the Corporate Defendants disclosed the Proskauer Report intentionally, and that report concerns the same subject matter as the underlying investigation, so the first two requirements for waiver are met. The dispute concerns the third prong, which is effectively a codification of the common law "at issue" doctrine. See S.E.C. v. Wyly, No. 10 Civ. 5760, 2011 WL 3366491, at *2 (S.D.N.Y. July 27, 2011).

privilege is asserted." <u>In re Grand Jury Proceedings</u>, 219 F.3d at 183.

In discrimination cases, the issue of waiver frequently arises when a defendant raises what is known as the Faragher/Ellerth defense. When the harasser is a "supervisor" and "no tangible employment action is taken," the corporate "employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any-harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided." <u>Vance v. Ball State University</u>, __ U.S. __, __, 133 S. Ct. 2434, 2439 (2013) (citing <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 807 (1998), and <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742, 765 (1998)). "When an employer puts the reasonableness of an internal investigation at issue by asserting the Faragher/Ellerth defense, the employer waives any privilege that might otherwise apply to documents concerning that investigation." <u>Robinson v. Vinyard Vines, LLC</u>, No. 15 Civ. 4972, 2016 WL 845283, at *4 (S.D.N.Y. March 4, 2016) (quoting <u>Koumoulis v. Independent Financial Marketing Group, Inc.</u>, 295 F.R.D. 28, 41 (E.D.N.Y. 2013), <u>aff'd</u>, 29 F. Supp. 3d 142 (E.D.N.Y. 2014)); <u>see also</u> <u>Angelone v. Xerox Corp.</u>, No. 09-CV-6019, 2012 WL 537492, at *3 (W.D.N.Y. Feb. 17, 2012).

In this case, the Corporate Defendants raised a

Faragher/Ellerth defense in their Answer. (Defendants J. Walter Thompson U.S.A., LLC, J. Walter Thompson Company, LLC and WPP PLC's Answer to Second Amended Complaint and Affirmative Defenses, Fourth Affirmative Defense at 23 ("Defendants exercised reasonable care to prevent and correct any alleged discriminatory or retaliatory conduct and Plaintiff unreasonably failed to take advantage of preventive or corrective opportunities provided by Defendants.")). However, they have since disavowed use of the Proskauer Report in connection with any Farragher/Ellerth defense. They first made this clear at a court conference (Transcript dated April 26, 2017, attached as Exh. 6 to Vladeck Decl., at 5-8), and they state unequivocally in their reply memorandum that "Defendants will <u>not</u> be using the legal conclusions in the Proskauer Report . . . to support their position that there has been no violation of the law . . . ." (Reply Memorandum of Law in Further Support of Defendants' Motion for Protective Order ("Reply") at 8).

This does not, however, end the inquiry. The Corporate Defendants have indicated that they do intend to rely on the Proskauer Report "to provide context for the actions they took as a result of the business recommendations in the Report." (Reply at 8). They contend that "[t]he fact is that Proskauer conducted an investigation and Defendants took certain actions based on same in good faith." (Reply at 9). From this, the Corporate Defendants

24

argue that "the sufficiency of Proskauer's investigation and/or the accuracy of its conclusions and recommendations have no bearing on the ultimate issue of liability." (Reply at 9). This is correct as far as it goes. Reliance by the Corporate Defendants on the conclusions of the report does not open up to discovery the details of the investigation that led to the report. <u>See</u> <u>House v. Wackenhut Services, Inc.</u>, No. 10 Civ. 9476, 2012 WL 4017334, at *17 (S.D.N.Y. Aug. 20, 2012) (finding that challenge to truth of report relied upon by employer was "a red herring," since relevant issue was employer's good faith reliance, not accuracy of report). Therefore, there is no waiver with respect to the categories of the Proskauer Documents that could be relevant, if at all, only to the accuracy of the findings in the report, specifically, notes of interviews of JWT employees, drafts of the report, and invoices.

However, when a party asserts a good faith defense, as the Corporate Defendants appear to do here, it may not selectively proffer the information upon which it relied. "[T]he assertion of a good-faith defense involves an inquiry into state of mind, which typically calls forth the possibility of implied waiver of the attorney-client privilege." <u>In re County of Erie</u>, 546 F.3d at 228-29; <u>see also</u> <u>In re Omnicom Group, Inc. Securities Litigation</u>, 233 F.R.D. 400, 413-14 (S.D.N.Y. 2006) ("[I]f the substance of the opinion -- whether privileged or not -- must be produced, so too must any otherwise privileged communications that would be needed

to judge its provenance and reliability."); <u>In re Lehman Brothers</u>
<u>Holdings, Inc.</u>, No 10 Civ. 6200, 2011 WL 2651812, at *2 (S.D.N.Y.
June 22, 2011); <u>American Steamship Owners Mutual Protection and</u>
<u>Indemnity Association, Inc. v. Alcoa Steamship Co.</u>, 232 F.R.D.
191, 198 (S.D.N.Y. 2005). Here, the extent to which the Corporate
Defendants acted in good faith on the basis of the Proskauer Report
is dependent upon the totality of the legal advice they received.
Thus, the communications related to Proskauer's conclusions, but
not the reliability of the investigation leading to those
conclusions, are discoverable. Accordingly, if they intend to
introduce the Proskauer Report in evidence, the Corporate
Defendants shall produce for my <u>in camera</u> review any documents
withheld on grounds of privilege that reflect communications
between themselves and Proskauer or between Proskauer and Davis &
Gilbert concerning the subject matter of the Proskauer Report. In
that way, I can determine whether fairness necessitates the
disclosure of these documents to the plaintiff.[4]

Conclusion

Within one week of the date of this order, the Corporate
Defendants shall (1) produce to the plaintiff all documents

---

[4] The fact that the Corporate Defendants downplay the
importance of the Proskauer Report to the litigation --
characterizing it as merely "providing context" -- does not alter
this analysis. It may indicate, however, that the Corporate
Defendants should consider whether the limited evidentiary value
of the report warrants the risk of waiving privilege.

provided to Proskauer by JWT and the interviewees in the course of the investigation to the extent such documents were not previously produced, and (2) submit for in camera review (a) all documents reflecting communications between Proskauer and either JWT or Davis & Gilbert concerning the subject matter of the investigation, and (b) the Rossein Documents. In all other respects, the Corporate Defendants' motion for a protective order (Docket no. 93) is granted.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       August 9, 2017

Copies transmitted this date:

Anne C. Vladeck, Esq.
Debra L. Raskin, Esq.
Jeremiah J. Iadevaia, Esq.
Joshua Tarrant-Windt, Esq.
Vladeck, Raskin & Clark, PC
565 Fifth Ave., 9th Floor
New York, NY 10017

Howard J. Rubin, Esq.
Jennifer T. Klausner, Esq.
Judith Kong, Esq.
Sharon S. Cohen, Esq.
Davis & Gilbert LLP
1740 Broadway
New York, NY 10019

Ricki E. Roer, Esq.
Celena R. Mayo, Esq.
Nancy V. Wright, Esq.
Alexandra Manfredi, Esq.
Wilson Elser Moskowitz Edelman & Dicker LLP
150 E. 42nd St.
New York, NY 10017